A01A1093, A01A1094. SERVICEMASTER COMPANY, L.P. et al.
v. MARTIN (two cases).
A01A1095. MARTIN v. SERVICEMASTER COMPANY, L.P. et al.
(556 SE2d 517)

JOHNSON, Presiding Judge.

Ray Martin sued his former employer, the ServiceMaster Company, L.P., and its successor, the ServiceMaster Company (collectively "ServiceMaster"), for breach of a written employment contract. Martin's complaint also contained language sounding in tort. ServiceMaster filed its answer in which it strongly denied the factual allegations of Martin's complaint. But the trial court struck ServiceMaster's answer as a sanction for discovery abuse, and the case proceeded to trial on the issue of damages. The trial court allowed the jury to consider both tort claims and breach of contract claims. Finding for Martin on both contract and tort theories, the jury awarded him over $1 million in compensatory damages, interest, attorney fees, and $135 million in punitive damages. The trial court subsequently reduced the total compensatory damages award to approximately $461,000 and reduced the punitive damages award to $45 million and entered judgment for Martin in those amounts.

ServiceMaster has indicated in a supplemental brief that it is not pursuing its appeal in Case No. A01A1094, which sought review of an order denying its motion to reduce a bond required by the trial court. Furthermore, the appeal in that case has been rendered moot

---

[21] *Hill Aircraft &c. Corp. v. Flanders,* 143 Ga. App. 504, 505 (1) (239 SE2d 155) (1977).

as a result of a prior order entered by this Court and by this opinion addressing the merits of the other two cases. For these reasons, the appeal in Case No. A01A1094 is dismissed.

In Case No. A01A1093, ServiceMaster appeals the judgment entered on the jury's verdict as reduced by the trial court. In Case No. A01A1095, Martin appeals from the trial court's order dismissing his breach of fiduciary duty claim and the trial court's order reducing the amount of his judgment.

### Case No. A01A1093

1. ServiceMaster vehemently argues that this is a breach of contract case. Martin just as vehemently argues that this is a tort case. Therefore, we must first address the effect of the trial court's order striking ServiceMaster's answer and the resulting default. Our decision on this issue will define the parameters of our analysis of the remaining issues.

In relevant part, OCGA § 9-11-55 (a) provides that when a case is in default, the plaintiff is entitled to judgment "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence." The effect of this provision is well settled in Georgia law. As the Supreme Court of Georgia and this Court have consistently held, a default operates as an admission of the well-pled facts alleged in the complaint, but not the conclusions of law contained therein:

> A judgment by default properly entered against parties sui juris operates as an admission by the defendant of the . . . definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. Conclusions of law[ ] and facts not well pleaded and forced inferences are not admitted by [the] default judgment.[1]

The default concludes the defendant's liability and estops him from offering any defenses which would defeat the right of recovery.[2] However, while the default in this case operates as an admission by ServiceMaster of the well-pled factual allegations in Martin's complaint and amended complaint, it does not admit allegations not well pled, forced inferences, or conclusions of law. The default does not

---

[1] (Punctuation omitted.) *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46) (1981); see also *Azarat Marketing Group v. Dept. of Admin. Affairs*, 245 Ga. App. 256, 257 (1) (b) (537 SE2d 99) (2000); *Spears v. Mack & Bernstein, P.C.*, 227 Ga. App. 743, 744 (1) (490 SE2d 463) (1997).

[2] *Cohran v. Carlin*, 254 Ga. 580, 585 (3) (331 SE2d 523) (1985).

preclude ServiceMaster from showing that under the facts as deemed admitted, no claim existed which would allow Martin to recover.[3]

We look now to those facts which are deemed admitted in order to determine what cause or causes of action those facts are legally sufficient to support. Viewed in this light, the evidence conclusively establishes that Martin worked as a sales representative in ServiceMaster's educational food service division under a written employment contract. The written employment contract was entered into on January 1, 1994, but Martin had been employed by ServiceMaster since 1987. The written employment contract had been in effect for some months before ServiceMaster's alleged decision to sell its food service division.

The evidence includes the written contract and conclusively establishes its terms. Under the contract, Martin earned a fixed base salary of $50,000 per year, as well as commissions at the rate of 12 percent of the "commissionable gross profit" from each completed sale he made. In addition to these compensation provisions, the written contract provided incentives which would increase the fixed base salary and award shares of ServiceMaster common stock if Martin achieved certain levels of sales performance.

During the course of his employment under this written contract, Martin negotiated a contract with George Washington University for ServiceMaster to manage the university's food service facilities. The evidence deemed admitted conclusively establishes his right to receive the commission on this and other contracts. The facts also establish his right to receive the incentive compensation described above based upon his sales performance levels as a result of this and his other sales. By ServiceMaster's internal calculations, Martin earned, but did not receive, at least $181,713.40 in commissions on various accounts, including this university account. In addition, the well-pled allegations in Martin's complaint show that under the contract's incentive terms Martin was entitled to a base salary increase to $61,000 per year and earned an award of at least 550 shares of ServiceMaster common stock. ServiceMaster never increased his base annual salary, nor did it transfer ownership of the common stocks or deliver the share certificates to Martin. Another provision of the written contract obligated ServiceMaster to pay Martin severance pay in an amount equal to two weeks of his fixed base salary at the increased base salary rate of $61,000 per year, or a little more than $2,300, but it was never paid.

ServiceMaster subsequently fired Martin and the other employees of its food service division and refused to pay him any of the commissions and benefits. Although ServiceMaster disputed Martin's en-

---

[3] *Azarat Marketing Group,* supra.

titlement to the compensation, the default judgment precludes its argument that the sales involved did not produce profits and were therefore not commissionable.

The facts deemed admitted also show that ServiceMaster intended to sell its educational food service business to a competitor; that it intended, as a result, to terminate the division sales force, including Martin, before closing this sale; and that it intended to deny Martin and its other sales representatives commissions they had already earned. It is deemed admitted that ServiceMaster knew Martin would never receive compensation for his past or ongoing work, but concealed that fact, as Martin continued working. These facts establish that ServiceMaster is liable for its breach of the employment contract and also allow the jury to consider whether ServiceMaster acted in bad faith in the transaction.

2. Our task is to determine what causes of action the well-pled facts will support. Contrary to Martin's contention and the trial court's actions, as a matter of law these facts do not establish or support a claim that ServiceMaster is liable to Martin in tort. While Martin labels various counts of the complaint and amended complaint "tortious interference with property" and "breach of duty" and attempts to set forth causes in action for tort, the labels used by Martin are not determinative.

It is well settled that mere failure to perform a contract does not constitute a tort.[4] A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law.[5] This is true even in situations where the contract is breached in bad faith, where the courts have consistently held that punitive damages are not available because there has been no tort.[6] Here, a thorough and careful review of the well-pled factual allegations of Martin's complaint and amended complaint, and the written contract itself, shows that all the duties which Martin complains were breached by ServiceMaster arise directly from, not independent of, Martin's written employment contract. All issues dealing with the extent of the duties owed to Martin, whether the duties were breached, the injury which flowed from the breach, and the remedy for any such breach are controlled by Martin's written employment contract. From these facts it is clear that in the absence of its contractual duties, ServiceMaster owed and breached no independent duty to Martin.

---

[4] See *Wynn v. Arias*, 242 Ga. App. 712, 716 (3) (531 SE2d 126) (2000); *Brown v. Hilton Hotels Corp.*, 133 Ga. App. 286, 288-289 (1) (211 SE2d 125) (1974).

[5] See *Wynn*, supra; *S & A Indus. v. Bank Atlanta*, 247 Ga. App. 377, 381 (4) (543 SE2d 743) (2000).

[6] See *Hub Motor Co. v. Burdakin*, 192 Ga. App. 872, 874 (2) (386 SE2d 854) (1989).

ServiceMaster argues that the trial court erred in allowing Martin to pursue claims for tortious interference with property and fraud because these claims were not pled in his amended complaint. According to Martin, these claims are included in Count 7 of his amended complaint, which is entitled "Breach of Duty" and alleges that ServiceMaster (1) owed him duties of fidelity, honesty, and good faith, and (2) intentionally breached these duties through fraud and deceit, "with an evil motive and with a reckless disregard of [Martin's] rights." We address these issues separately below.

(a) *Tortious Interference with Property*. In his original complaint, Martin alleged that he was entitled to shares of ServiceMaster stock. He pled two claims relating to the stock shares: a breach of employment contract claim, and a tort claim for conversion. The conversion claim asserted that (1) ServiceMaster owed Martin a payroll check, shares in ServiceMaster, and other benefits and monies; (2) these items, he alleged, constituted property rights belonging to Martin; and (3) ServiceMaster refused and failed to deliver his property to him. Martin deleted this count in his amended complaint, and the trial court noted that Martin had dismissed this claim for conversion.

Martin subsequently filed his amended complaint alleging what he labeled a "breach of duty" tort cause of action. He argues that this amended complaint authorizes a valid claim for tortious interference with property because ServiceMaster owed him a certain number of ServiceMaster shares, but refused to deliver his share certificates. However, the "breach of duty" tort claim in Martin's amended complaint says nothing whatsoever about the stock shares.

Contrary to his assertions, while Martin asserted facts supporting a contractual claim for the stock shares, he did not plead facts which would support a tort claim for the stock shares. In fact, such a claim was specifically dismissed by Martin. We, therefore, agree with ServiceMaster's argument that the jury should not have been allowed to consider this claim for tortious interference with property. As to this claim, ServiceMaster's motion to dismiss and related motions should have been granted.

(b) *Fraud*. Martin's fraud count is also entitled "Breach of Duty" and consists of facts alleging that ServiceMaster owed him duties of fidelity, honesty, and good faith, and intentionally breached these duties through fraud and deceit, "with an evil motive and with a reckless disregard of [Martin's] rights." The facts specifically establish that ServiceMaster (1) falsely claimed Martin was not entitled to receive a commission on the George Washington University contract, (2) gave false and deceptive reasons for nonpayment of the commission owed on the George Washington University contract, and (3) intentionally deceived Martin about the reasons for nonpayment of his commissions.

Although a duty of good faith and fair dealing is implied in every contract, this duty is contractual in nature and does not ordinarily give rise to tort liability.[7] While ServiceMaster could be held liable in tort if, in addition to violating a contract obligation, it also violated a duty, independent of contract, to avoid harming him,[8] Martin does not specify facts which would support a finding that ServiceMaster owed him any duty independent of those created by the written employment contract.

> [W]here defendant's negligence ends merely in nonperformance of the contract and where defendant is not under any recognized duty to act apart from the contract, the courts generally still see no duty to act affirmatively except the duty based on — and limited by — defendant's consent. In those circumstances, an action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty — the duty must arise independent of contract to constitute a tort.[9]

Here, to the extent that ServiceMaster violated a duty of good faith and fair dealing, the well-pled facts show that such a duty was imposed solely by the written employment contract, and not by any recognized independent duty under tort or other provision of law.[10] Thus, these allegations do not authorize a remedy over and above that to which Martin is entitled as a result of the breach of contract. The only additional remedy authorized by law under these facts is an award of attorney fees and expenses of litigation as provided by OCGA § 13-6-11.

Martin contends in his appellate brief that the injury caused by the alleged fraud is ServiceMaster's "theft of Martin's services by means of false representations and concealment of material facts." However, the only misrepresentations and concealment alleged in the amended complaint occurred after Martin had performed the services at issue. The complaint and amended complaint do not allege any false statements or concealment inducing Martin to provide ongoing or future services. Thus, Martin's reliance on *Kent v. A. O. White, Jr., Consulting Engineer, P.C.*[11] and *Wilson v. S & L Acquisi-*

---

[7] See *Wynn*, supra.

[8] *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 365 (203 SE2d 587) (1973).

[9] (Citation and punctuation omitted.) Id.

[10] Compare *Spears*, supra at 745-746 (2) (an independent duty of good faith arises where the employment agreement stated that the employee was to be treated as a partner in the company during her employment, giving rise to a fiduciary duty).

[11] 238 Ga. App. 792, 793-794 (1) (520 SE2d 481) (1999).

*tion Co.*[12] is misplaced. In those cases, the injury was caused by the alleged fraud: the *Kent* plaintiff was not paid for work performed in reliance on misrepresentations,[13] while the *Wilson* plaintiff was not paid moving expenses incurred in reliance on misrepresentations.[14]

Moreover, well-established case law refutes Martin's assertion that "[t]he terms of Martin's employment contract do not constrain his recovery *in tort* for the value of his services." "Any breach of contract must arise from the contract, and does not give rise to an action for tort, whether or not such breach was negligent or wilful."[15] The allegations of Martin's amended complaint cannot serve to convert a claim in contract into a discrete claim in tort.[16] They add nothing of substance to the breach of contract claim. Accordingly, Service-Master's motion to dismiss and related motions should have been granted as to Martin's attempted fraud claim.

(c) *Punitive Damages*. It is well settled that punitive damages are not available in breach of contract claims.[17] Although Martin's prayer for relief requested an award of punitive damages, the prayer is not an allegation of fact in the complaint which requires an answer, and it is not part of Martin's cause of action.[18] Thus, the default is of no effect on this issue. ServiceMaster's motion to dismiss and related motions should have been granted as to Martin's claim for punitive damages.

3. Based on our holding in Division 2, it is clear that this case must be remanded for a new trial on damages. Because Martin is not entitled to recover in tort, such claims may not be submitted to the jury. We cannot merely affirm the aggregate amount as awarded by the jury and reduced by the trial judge for breach of contract because we cannot ascertain from the record whether this amount includes all of Martin's valid contractual claims, including commissions, base pay, severance pay, and his entitlement to the value of shares of common stock earned but not delivered to him.

Because a jury could find, based upon the facts deemed admitted, that ServiceMaster acted in bad faith, was stubbornly litigious, or caused Martin unnecessary trouble and expense, the trial court is also authorized to submit Martin's claims for attorney fees and litiga-

---

[12] 940 F2d 1429, 1439 (11th Cir. 1991).

[13] *Kent*, supra at 793.

[14] *Wilson*, supra at 1439-1440.

[15] (Punctuation omitted.) *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767, 769-770 (3) (d) (386 SE2d 151) (1989); see generally *Burritt v. Media Marketing Svcs.*, 204 Ga. App. 848, 850 (5) (420 SE2d 792) (1992).

[16] *Faircloth*, supra.

[17] *Trust Co. Bank v. C & S Trust Co.*, 260 Ga. 124, 126 (1) (390 SE2d 589) (1990); *McDuffie v. Argroves*, 230 Ga. App. 723, 726 (3) (497 SE2d 5) (1998).

[18] *Drug Emporium v. Peaks*, 227 Ga. App. 121, 128 (2) (c) (488 SE2d 500) (1997).

tion expenses to the jury. The evidence may properly include testimony regarding the hours Martin's attorneys were required to spend on the discovery and other aspects of this case, from investigation through the trial. Evidence of other discovery disputes in other cases in which ServiceMaster has been involved would not be relevant or material.

4. ServiceMaster's remaining enumerations of error are rendered moot by our holdings above.

*Case No. A01A1095*

5. Martin contends the trial court erred in dismissing his tort claim for breach of fiduciary duty. He specifically alleges that ServiceMaster owed him a fiduciary duty to properly calculate and pay his commissions, and he relies on the allegations in his amended complaint to establish the existence of a confidential relationship. However, the well-pled facts in Martin's complaint and amended complaint show that Martin was merely an employee of ServiceMaster. Generally, the relationship between an employer and employee is that of arms-length bargaining, and the law will not imply confidentiality.[19] Here, there are no well-pled facts from which a jury could find a confidential relationship. Martin's conclusory statements are not admitted by ServiceMaster's default, and the trial court properly dismissed Martin's breach of fiduciary duty claim.

6. Martin's contentions regarding the trial court's reduction of damages are moot.

*Judgment reversed and case remanded in Case No. A01A1093. Judgment affirmed in Case No. A01A1095. Appeal dismissed in Case No. A01A1094. Ruffin and Ellington, JJ., concur.*

DECIDED NOVEMBER 15, 2001 —
RECONSIDERATION DENIED DECEMBER 4, 2001 — 

*Alston & Bird, James C. Grant, Jeffrey J. Swart, King & Spalding, Chilton D. Varner, Robert D. Hays, Jr.*, for appellants.
*Byrne, Moore & Davis, Francis X. Moore*, for appellee.

---

[19] *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 607 (1) (b) (503 SE2d 278) (1998); *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975).