**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 19, 2023**

# In the Court of Appeals of Georgia

A23A1079. CONTOUR SIERRA, LLC v. WILLIAMS et al.

HODGES, Judge.

Defendant Contour Sierra, LLC ("Contour"), appeals from the trial court's final judgment awarding plaintiffs Colette Williams and Milton Brooks (collectively, the "plaintiffs") damages following Contour's default. Contour argues that the trial court erred by entering default judgment despite the plaintiffs' purported failure in their complaint to state well-pled factual allegations regarding their claims. We conclude that the well-pled factual allegations in the complaint support the plaintiffs' claims, and we therefore affirm the trial court's final judgment.

The well-pled allegations of the complaint show that on December 1, 2018, the plaintiffs had just pulled into a parking spot at their apartment complex when they heard gunshots. The plaintiffs were terrified and crouched down inside their vehicle.

Although they were not physically injured as a result of the gunfire, their vehicle received significant damage.

The plaintiffs sued Contour as a party that owned, operated, and/or managed the subject premises on the date in question, and Contour was served in March 2020. The complaint alleged claims for negligence, negligence per se, negligent infliction of emotional distress, and punitive damages. Contour failed to answer the complaint or respond to the plaintiffs' request for admissions. The plaintiffs, therefore, moved for entry of default judgment against Contour. The trial court granted the motion, ordering that "judgment as to liability be entered against Defendant Contour Sierra, LLC with the only remaining issue for determination by the Court being the amount of damages."[1]

The parties subsequently filed trial briefs in response to the trial court's purported "request for 'a brief with legal support on any challenge to the Plaintiffs' claims for personal injuries or other claims.'" In its trial brief, Contour argued that "[b]ecause the well-pled allegations are not sufficient to show that Contour is liable

---

[1] The plaintiffs also sued Roco Sierra Townhomes, LLC ("Roco"), as another company that owned, operated, and/or managed the subject premises. Default judgment was entered against Roco, but the trial court concluded, following the damages hearing, that Roco was not responsible for any apportionment of damages. Roco is not a party to this appeal.

on any of their claims, Plaintiffs are not entitled to a default judgment." The plaintiffs disputed Contour's argument, asserting that Contour was belatedly attempting to set aside the default and shift the burden of proof to the plaintiffs. The trial court subsequently conducted a trial on damages during which, according to Contour, the court "heard argument on, and rejected, Contour's arguments raised in its Trial Brief."[2]

Following the bench trial on damages, the court awarded $474,000 to Williams (including specific amounts for lost wages, future medical expenses, and past, present, and future pain and suffering) and $446,493.69 to Brooks (including specific amounts for property damages, future medical expenses, and past, present, and future pain and suffering). The court determined that Contour should bear 100 percent of the damages, and Contour appeals from this judgment.

1. At the outset, we must determine the procedural posture of this case in order to address the appropriate burden of proof and standard of review. Contour argues that the trial court erred in entering default judgment because the well-pled factual

_____

[2] The damages trial was not transcribed, and although Contour prepared a narrative transcript by recollection pursuant to OCGA § 5-6-41 (d) and (g), it was unable to obtain approval of the transcript from either opposing counsel or the trial court.

allegations in the plaintiffs' complaint do not establish claims for negligence based on premises liability, negligence per se based on statutory violations, or negligent infliction of emotional distress. The plaintiffs assert that Contour's argument is actually a motion to set aside default, and the motion fails because: (i) Contour failed to file a motion to set aside below; (ii) the only method to open default at this juncture is by filing a motion to set aside under OCGA § 9-11-60 (d), and Contour has not shown it is entitled to open default on those grounds; and (iii) witnesses testified and exhibits were produced at the bench trial, and Contour's failure to have the bench trial transcribed means it cannot meet its burden to open default. We disagree with the plaintiffs' characterization of Contour's argument as a motion to set aside or open default.

OCGA § 9-11-55 (a) provides, in relevant part, that when a case is in default, the plaintiff is entitled to judgment "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence," unless the action involves unliquidated damages, "in which event the plaintiff shall be required to introduce evidence and establish the amount of damages. . . ." In other words, a default "operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from

4

the allegations of the declaration." (Citation and punctuation omitted.) *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 497 (740 SE2d 413) (2013). A defendant in default has admitted each and every material allegation in a plaintiff's complaint except the amount of damages, and the defendant is estopped from offering any defenses that would defeat the right of recovery. *Cohran v. Carlin*, 254 Ga. 580, 585 (3) (331 SE2d 523) (1985); accord *Willis*, 321 Ga. App. at 498. In addition, "defenses which go to the right of recovery are not available to [the defendant] in default even though the same defense may also go to the assessment of damages." (Citation and punctuation omitted.) *Paris v. E. Michael Ruberti, LLC*, 355 Ga. App. 748, 752 (845 SE2d 720) (2020); accord *Flanders v. Hill Aircraft & Leasing Corp.*, 137 Ga. App. 286, 288 (223 SE2d 482) (1976) (holding that it is error for a trial court to permit defenses that go to both the assessment of damages as well as the right of recovery because it "would leave the defendant in as good [a] position when he was in default as though he had answered") (citation and punctuation omitted).

That being said, conclusions of law, facts not well-pled, and forced inferences are not admitted by a default judgment. *Willis*, 321 Ga. App. at 497; accord *Fink v. Dodd*, 286 Ga. App. 363, 365 (1) (649 SE2d 359) (2007). Simply stated,

while a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein. A default simply does not require blind acceptance of a plaintiff's erroneous conclusions of law. Nor does a default preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover.

(Citation and punctuation omitted.) *Fink*, 286 Ga. App. at 365 (1); accord *Willis*, 321 Ga. App. at 498. In considering the sufficiency of factual allegations in a complaint to which the defendant has defaulted, "we resolve all doubts in favor of [the] plaintiff[.]" *Zhong v. PNC Bank*, 345 Ga. App. 135, 140 (2) (b) (812 SE2d 514) (2018). Indeed, the burden is on the defendant to show that under the factual allegations of the complaint, as deemed admitted, no claim existed which would allow the plaintiff to recover, but there is no requirement that the defendant file a motion to open default or set aside before making this showing. See *Zhong*, 345 Ga. App. at 139-140 (2) (b) (addressing argument that plaintiff cannot recover from the defendant under the facts as deemed admitted where no motion to open or set aside default was filed); *Fink*, 286 Ga. App. at 364-365 (1) (addressing defendant's argument regarding the well-pled allegations of the complaint where defendant did not file a motion to open or set aside default). Thus, a default does not preclude Contour from showing

6

that, under the facts as deemed admitted, no claim existed which would allow the plaintiffs to recover. See *Willis*, 321 Ga. App. at 498; *Fink*, 286 Ga. App. at 365 (1). Such an argument does not eliminate a defendant's admissions by default; it merely requires the court to determine whether the defendant has met his burden of showing that the admissions do not establish liability.

A motion to open default under OCGA § 9-11-55 (b), on the other hand, seeks to return a party to its original position in the lawsuit prior to its admission of the factual allegations in the complaint by default. A trial court may allow a party to open default if certain requirements are met and the party can demonstrate: (i) providential cause preventing the filing of required pleadings; (ii) excusable neglect; or (iii) a proper case on terms fixed by the court. A motion to open default has nothing to do with the sufficiency of well-pled factual allegations of the complaint, except to the extent that such an argument may set up a meritorious defense as a requirement for opening default. See, e.g., *Exxon Corp. v. Thomason*, 269 Ga. 761 (1) (504 SE2d 676) (1998); see also OCGA § 9-11-55 (b).

The plaintiffs correctly assert that after the expiration of the term of court in which the default judgment is entered, the judgment may be set aside only under the criteria set forth in OCGA § 9-11-60 (d). See *Mitchell v. Speering*, 239 Ga. App. 472,

7

473 (521 SE2d 419) (1999). In addition, once final judgment has been entered in a case, a motion to set aside under OCGA § 9-11-60 (d) must be granted before default can be opened. See *Pine Tree Publishing v. Community Holdings*, 242 Ga. App. 689, 690 (531 SE2d 137) (2000); *Archer v. Monroe*, 165 Ga. App. 724, 725 (2) (302 SE2d 583) (1983). In such a case, a party must show one of three grounds to set aside the default: (1) lack of jurisdiction over the person or the subject matter; (2) fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant; or (3) a nonamendable defect which appears upon the face of the record or pleadings. OCGA § 9-11-60 (d). The statute specifically states that "it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be granted, but the pleadings must affirmatively show no claim in fact existed." OCGA § 9-11-60 (d) (3). Once again, however, a motion to set aside default under OCGA § 9-11-60 (d) has nothing to do with an argument that default judgment is improper because the well-pled complaint allegations fail to support a cause of action. See, e.g., *Hope Elec. Enterprises v. Proforce Staffing*, 268 Ga. App. 302, 303-304 (1), (2) (601 SE2d 723) (2004) (addressing in separate divisions the trial court's refusal to set aside a default judgment and the defendant's claim that the well-pled allegations of the complaint show that no claim existed).

8

In summary, we reject the plaintiffs' contention that Contour's argument regarding the well-pled factual allegations in the complaint is actually a motion to open or set aside the default judgment. As stated above, a default does not "preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover." (Citation omitted.) *Willis*, 321 Ga. App. at 498. And there is no requirement that such an argument constitutes or must be brought as a motion to open or set aside default. As such, the standard of review is not, as argued by the plaintiffs: (i) whether the trial court abused its discretion in refusing to set aside the default judgment, see *Principal Lien Svcs. v. NAH Corp.*, 346 Ga. App. 277, 278 (814 SE2d 4) (2018); or (ii) whether the complaint placed Contour on notice of the claims being brought against it, see *Capital Assocs. v. Keoho*, 173 Ga. App. 627, 628 (327 SE2d 586) (1985) (addressing a nonamendable defect in the context of a motion to set aside). Rather, given the procedural posture of this case, "[o]ur task is to determine what causes of action the well-pled facts will support." (Citation and punctuation omitted.) *Paris*, 355 Ga. App. at 753; accord *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 753 (1) (556 SE2d 517) (2001) ("We [must] look . . . to those facts which are deemed admitted in order to determine what cause or causes of action those facts are legally sufficient to support."). Accordingly, Contour

9

is not precluded from showing that, under the facts as deemed admitted, no claim exists which would allow the plaintiffs to recover. *Fink*, 286 Ga. App. at 365 (1).

We also reject the plaintiffs' contentions that Contour's failure to have the bench trial transcribed means that Contour did not preserve its argument that the well-pled factual allegations of the complaint show that no claim exists or precludes Contour's ability to demonstrate that the default judgment is improper on this basis. The question is not, as the plaintiffs argue, whether Contour "failed to make a record on the extensive testimony on these subjects at the [damages] trial," but whether Contour met its burden of demonstrating that under the factual allegations of the complaint, as deemed admitted, no claim exists which would allow the plaintiff to recover. See *Zhong*, 345 Ga. App. at 139-140 (2) (b); *Fink*, 286 Ga. App. at 364-365 (1). Moreover, as the trial court noted in its final judgment, a hearing was held "regarding damages" due to the plaintiffs, and the court heard evidence "regarding damages." The damages trial was just that — a trial for damages. The plaintiffs cannot rely on evidence they presented at the damages hearing to justify the trial court's previous grant of a default judgment as to Contour's liability based on the well-pled factual allegations of their complaint. See generally *Paris*, 355 Ga. App. at 753 ("Our task is to determine what causes of action the well-pled facts will

support.") (citation and punctuation omitted); *Bridges v. Wooten*, 305 Ga. App. 682, 684 (1), n. 4 (700 SE2d 678) (2010) ("[O]ur review is limited to those claims in the complaint, if any, that the defendants effectively admitted by default.").

With these principles in mind, we turn to the complaint's factual allegations regarding the claims at issue in this appeal.

2. Contour argues that the trial court erred in entering default judgment to the plaintiffs on their negligence claim because the well-pled factual allegations in the complaint fail to establish that the incident in question was reasonably foreseeable, a necessary element of negligence based on premises liability. Specifically, Contour asserts that the plaintiffs fail to establish the legally-required element of "substantial similarity" between the alleged prior criminal activity on the premises and the incident in question. We disagree.

Four elements are essential to state a cause of action for negligence under Georgia law:

> (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

11

(Citation and punctuation omitted.) *Norby v. Heritage Bank*, 284 Ga. App. 360, 361 (644 SE2d 185) (2007). In the context of a premises liability claim, it is well-settled that a proprietor or landlord must exercise ordinary care in keeping the premises and approaches safe. Id.; see also OCGA § 51-3-1. However, "a proprietor is insulated from liability by the intervention of an illegal act which is the proximate cause of the injury, unless the proprietor had reasonable grounds for apprehending that such criminal act would be committed." (Citation and punctuation omitted.) *Norby*, 284 Ga. App. at 361. In other words, to prevail against a proprietor for injuries incurred as the result of a criminal act by a third party on the proprietor's premises, a plaintiff must show that the criminal act was reasonably foreseeable. Id. at 361-362.

"Knowledge that the premises subjected its guests to an unreasonable risk of criminal attack may be demonstrated by evidence of the occurrence of prior substantially similar incidents." (Citation and punctuation omitted.) *Norby*, 284 Ga. App. at 362. "Although the prior criminal activity must be substantially similar to the crime in question, there is no requirement that the crimes be identical. . . . The prior incident need not be the same crime, and the means of inflicting injury need not be identical to be deemed substantially similar." (Citations and punctuation omitted.) *Walker v. Aderhold Properties*, 303 Ga. App. 710, 712 (1) (694 SE2d 119) (2010).

12

In fact, "[p]rior property crimes may give a landlord notice of possible future crimes against a person." Id. "All that is required is that the prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident." Id.

With regard to Contour's foreseeability argument, the plaintiffs' complaint set out the following factual assertions relevant to the issue of Contour's reasonable foreseeability based on similar incidents. On the date of the incident, Contour "knew, or in the exercise of reasonable care should have known, that violent criminal activity had previously occurred at Sierra Townhomes[,]" and Contour "failed to remedy one or more security deficiencies about which [it was] on notice prior to" the incident. In addition, Contour had "actual and constructive knowledge of extensive violent crime, armed robberies, car theft[,] and other crimes occurring in the common areas of the premises" prior to the incident at issue. Within three years prior to the incident, Contour "had notice of the approximate times and date[s] for numerous crimes that had occurred on its premises — and which were investigated by both the Fulton County Police Department and the City of South Fulton Police Department, formalized in written reports." Contour also "had actual and constructive knowledge of violent criminal activity existing on and around the premises within three years

13

prior to the subject incident, including prior violent crimes, armed robberies, gun-related incidents, and illegal drug activity." The factual allegations deemed admitted further show that "[d]espite the fact [it] had knowledge of prior criminal activity, [Contour] failed to make any changes or improvements to enhance the security of the premises." Contour "negligently failed to act on [its] knowledge of prior crimes, and failed to act to correct, prevent, or warn of prior criminal activity and the dangerous environment of said property."

In addition, although Contour focuses exclusively on the factual allegations in the complaint, it fails to take into account the plaintiffs' request for admissions directed to Contour, which were not answered, and therefore are deemed admitted. See OCGA § 9-11-36 (a) (2), (b). These unanswered admissions conclusively establish that: (i) prior to owning the property, Contour reviewed historical crime data regarding the premises; (ii) Contour maintained records of alleged criminal incidents occurring on the premises; (iii) prior to the incident, Contour received verbal reports/communications regarding crime on the property, which it failed to record; (iv) prior to the incident, Contour was aware of gang activity on the property; (v) prior to the incident, Contour was aware of violent crime occurring on the property; (vi) within five years of the incident, Contour "had actual knowledge of multiple

14

violent crimes occurring on the property[;]" and (vii) within three years of the incident, tenants, guests, invitees, employees, or agents complained to Contour about criminal activity at the Sierra Townhomes.

Resolving all doubts in favor of the plaintiffs, see *Zhong*, 345 Ga. App. at 140 (2) (b), we conclude that the well-pled factual allegations of the plaintiffs' complaint and the facts deemed admitted by Contour when it failed to respond to the plaintiffs' request for admissions demonstrate that prior violent crimes occurred on the property and these violent crimes should have attracted Contour's attention to the dangerous condition which resulted in the litigated incident. See *Walker*, 303 Ga. App. at 712 (1). Contour therefore should reasonably have foreseen that the violent incident at issue in this case could have occurred. The fact that the plaintiffs did not actually identify the prior violent crimes so as to show that their location, nature, and extent were substantially similar to the incident in question does not automatically entitle Contour to relief because, as stated previously, all that is required to show substantially similar crimes is that the prior incidents "be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident." *Walker*, 303 Ga. App. at 712 (1). Multiple violent crimes occurring on and

15

around the property, including armed robberies, gun-related incidents, illegal drug activity, and gang activity, are sufficient to put Contour on notice in this case.

Contour has not met its burden of showing that under the admitted definite and certain factual allegations in the complaint, as well as the admitted request for admissions, no claim exists which would allow the plaintiffs to recover for negligence. *Willis*, 321 Ga. App. at 498; *Fink*, 286 Ga. App. at 364-365 (1). The trial court therefore did not err in entering default judgment as to liability on the plaintiffs' negligence claim.

3. Contour next argues that the trial court erred in entering default judgment on the plaintiffs' negligence per se claim because the well-pled factual allegations in the complaint fail to establish liability based on violations of OCGA §§ 44-7-13 and 44-7-14. We again disagree.

OCGA § 44-7-13 provides that a landlord "must keep the premises in repair[,]" and OCGA § 44-7-14 provides that "[h]aving fully parted with possession and the right of possession, . . . the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair." With respect to the plaintiffs' negligence per se claim, their complaint alleges that "Defendants had a duty, pursuant to OCGA § 44-7-13, to keep the premises of the

16

subject apartment complex in repair[,]" and "Defendants breached their statutory duty under OCGA § 44-7-13 to repair and were negligent per se pursuant to OCGA § 44-7-14." (Emphasis omitted.)

Contour asserts that the statutes only apply to landlords and the complaint does not describe Contour as a landlord. The complaint, however, states that Contour "owned, operated, and/or managed the subject premises on the date in question." And Contour admitted by failing to respond to the plaintiffs' request for admissions that it was "the owner of the premises ('Sierra Townhomes')" on and prior to the incident in question. The Supreme Court of Georgia has defined the "owner or occupier of land" as the landlord. See, e.g., *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 181 (3) (856 SE2d 267) (2021). We therefore reject Contour's assertion that the statutes do not apply to Contour.[3]

---

[3] We note that OCGA § 44-7-14 involves liability imposed on *out-of-possession* landlords. Thus, "[i]f the dangerous condition that ultimately causes an injury is located in an area the landlord still possesses, then liability under OCGA § 51-3-1 et seq. applies, and OCGA § 44-7-14 does not apply by its own terms." *Cham,* 311 Ga. at 176 (2) (a). Here, there is no factual allegation establishing that Contour is an out-of-possession landlord of the apartment common area, so OCGA § 44-7-14 likely does not apply and the plaintiffs' reliance on that statute for their negligence per se claim may be fundamentally flawed. However, Contour never raised this argument below; it argued only that the plaintiffs could not recover under negligence per se because the admitted facts failed to establish that it was the landlord. Contour made no claim regarding its possession or lack of possession over the premises.

17

Contour also contends that the complaint fails to identify the plaintiffs as tenants of a lease executed with Contour. However, the well-pled allegations of the complaint allege that the plaintiffs "were residents" of the Sierra Townhomes and were "returning to their apartment" when the incident occurred. The fair inferences and conclusions of fact to be drawn from these allegations are that the plaintiffs were tenants at the apartment complex where Contour was the landlord when the incident occurred. See *Willis*, 321 Ga. App. at 497.

Finally, Contour asserts, without citing any supporting authority, that because the factual allegations in the complaint refer to the defendants collectively, it is not "definite and certain" that Contour violated either statute. However, the fact that the complaint alleges the same theory against another party is irrelevant since the plaintiffs are allowed to plead alternative theories of a case in their complaint, even if the theories are contradictory. See OCGA § 9-11-8 (e) (2); *Atlanta Women's Specialists v. Trabue*, 310 Ga. 331, 336-337 (2) (850 SE2d 748) (2020). As stated previously, Contour admitted it owned the premises where the shooting occurred.

---

Accordingly, because "arguments raised for the first time on appeal are deemed to be waived," *Trop, Inc. v. City of Brookhaven,* 296 Ga. 85, 90 (3) (764 SE2d 398) (2014), we need not address this issue on appeal.

18

And the factual allegations in the complaint, admitted by Contour, show a violation of the applicable statutes.

Contour has failed to meet its burden of proving that the well-pled factual allegations of the complaint, along with the fair inferences and conclusions of fact to be drawn from those allegations, show that no claim existed which would allow the plaintiffs to recover for negligence per se. *Willis*, 321 Ga. App. at 497; *Fink*, 286 Ga. App. at 364-365 (1). The trial court therefore did not err in entering default judgment as to liability on the plaintiffs' negligence per se claim.

4. Finally, Contour argues that the trial court erred in granting default judgment in favor of the plaintiffs on their claim for negligent infliction of emotional distress because the well-pled factual allegations of the complaint show that (a) the plaintiffs admitted they suffered no physical injury, and (b) no claim exists which would allow recovery for pecuniary loss. Although we agree with Contour that the plaintiffs' complaint fails to establish a claim for emotional distress damages under the impact rule because the plaintiffs suffered no physical injury, we conclude that the complaint sets forth sufficient factual allegations to support a claim for emotional distress damages under the pecuniary loss exception to the impact rule. The trial court, therefore did not err in granting default judgment to the plaintiffs on this claim.

19

(a) *Impact rule*. Under Georgia law, a plaintiff generally cannot recover for emotional distress arising from ordinary negligence without satisfying the impact rule, which has three elements: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." (Citation and punctuation omitted.) *Mayorga v. Benton*, 364 Ga. App. 665, 675 (2) (875 SE2d 908) (2022); accord *Eley v. Fedee*, 362 Ga. App. 618, 622 (1) (869 SE2d 566) (2022). The Supreme Court of Georgia has held that "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." (Citation and punctuation omitted.) *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 (I) (533 SE2d 82) (2000). In other words, the physical impact must result in physical injury. See *Holt v. Rickman*, 368 Ga. App. 55, 56 (889 SE2d 155) (2023); *Malibu Boats v. Batchelder*, 347 Ga. App. 742, 745 (1), 746-747 (2) (819 SE2d 315) (2018). "A plaintiff's failure to meet any one of the three requirements of the impact rule bars recovery even in cases in which the circumstances portend a claim of emotional distress." (Citation and punctuation omitted.) *Holt*, 368 Ga. App. at 56-57.

Here, although the complaint alleges that the plaintiffs "suffered physical impact as a result of the attack," the plaintiffs cannot satisfy the second and third elements of the impact rule because the complaint conclusively establishes that they suffered no physical injury as a result of the incident that forms the basis of their claims. The complaint unequivocally states in the opening paragraph that the plaintiffs "were not physically injured as a result of the gunfire." In addition, the complaint later states that the plaintiffs "were fortunate to escape physically unharmed from the experience."

While the plaintiffs argue that Georgia courts have expansive views of impact and physical injury, and they assert that they detailed in their trial brief that they "were showered in glass as the rear window shattered[,]" and "bullets flew into the vehicle, hitting the seats upon which they were sitting and lodging in the door next to Ms. Williams['s] thigh so close to her that she could feel the heat upon her skin," neither their argument nor their unsupported assertions — even if properly before this Court since the factual assertions are not included in the plaintiffs' complaint[4] — explicitly contradicts the definite and certain factual allegations in the complaint that

[4] "This court cannot consider statements made in briefs which are not supported by the record." *Burkhead v. American Legion, Post No. 51*, 175 Ga. App. 56, 58-59 (332 SE2d 311) (1985).

the plaintiffs were not physically injured as a result of the incident. Likewise, we cannot infer physical injury based on the fact that the plaintiffs' vehicle received significant damage from the gunshots, especially in light of the unequivocal factual allegations that the plaintiffs suffered no physical injuries.[5] See *Eley*, 362 Ga. App. at 625 (2) (a). To recover for negligent infliction of emotional distress, the impact rule requires that the plaintiffs must suffer a physical injury, and the physical injury — not the impact — must cause the plaintiffs' mental suffering or emotional distress. See *Mayorga*, 364 Ga. App. at 675 (2); see also *Brock v. Atlanta Airlines Terminal Corp.*, 359 Ga. App. 226, 230 (1) (857 SE2d 74) (2021) (holding that recovery for negligent infliction of emotional distress is limited to compensation for emotional distress incurred as a consequence of the plaintiff's physical injuries); *Malibu Boats*, 347 Ga. App. at 748 (3) ("Where mental suffering is distinct and separate from the physical

---

[5] It appears based on the complaint's allegation regarding the "zone of danger" that the plaintiffs are attempting to assert a claim for negligent infliction of emotional distress under either a federal standard or a different state standard. For example, under the Federal Employers' Liability Act ("FELA"), 45 USC § 51, plaintiffs may recover emotional injury if they "sustain a physical impact as a result of a defendant's negligent conduct, or . . . are placed in immediate risk of physical harm by that conduct. That is, those within the zone of danger of physical impact can recover for fright, and those outside of it cannot." (Citation omitted.) *Norfolk Southern R. v. Everett*, 299 Ga. App. 420, 422 (682 SE2d 621) (2009). Georgia does not recognize the "zone of danger" test. See generally *Lee*, 272 Ga. at 586-588 (II), (III).

22

injury, it cannot be considered. Accordingly, only those damages related to the sustained physical injury itself may be recoverable.") (citation and punctuation omitted).

The plaintiffs cite *Grizzle v. Norsworthy*, 292 Ga. App. 303, 304-305 (1) (a) (664 SE2d 296) (2008), for the proposition that "if parts of the vehicle impacted the plaintiffs as a result of the gunfire, then this is sufficient impact for a jury to find in favor of the plaintiffs." First of all, we do not agree with the plaintiffs that "[i]t is reasonable to infer, based upon the allegations in the complaint, that [they] were struck by parts of their car." Other than significant damage to the vehicle, which, as stated above, does not contradict the unequivocal factual allegations in the complaint that the plaintiffs were not injured, the complaint does not mention parts of the car breaking or impacting the plaintiffs. The plaintiffs' forced inference about parts of the car breaking and striking the plaintiffs is not well-pled in the complaint or admitted by Contour's default. See *Willis*, 321 Ga. App. at 497. Second, even if we were to consider the plaintiffs' unsupported trial brief assertions, we do not find that the shattered glass or heat from a close bullet in this case, without more, satisfies the impact rule's elements that the physical impact causes physical injury and that the physical injury causes the plaintiffs' mental suffering or emotional distress. *Mayorga*,

23

364 Ga. App. at 675 (2); accord *Eley*, 362 Ga. App. at 622 (1). In fact, the complaint clearly alleges that the plaintiffs suffered emotional distress "as a result of having a gun fired at them on [Contour's] premises," not as a result of any physical injuries. Finally, the plaintiffs' argument misconstrues our holding in *Grizzle*. In *Grizzle*, we concluded that an issue of fact existed as to whether the physical impact Grizzle suffered when the collision caused his elbow and knee to strike the front console caused him physical injury. 292 Ga. App. at 303, 305 (a) (1). In this case, there is no dispute or contradiction that the plaintiffs suffered no physical injuries.

We also reject the plaintiffs' argument that the complaint "in its entirety and in the context of the whole" clearly put Contour on notice that the plaintiffs sought to recover emotional distress for the "injuries . . . suffered flowing from the physical impact." Although the complaint does, indeed, refer to "injuries and other damages suffered by the Plaintiffs" under the "negligence" cause of action, the "injuries and other damages" are defined in that section of the complaint as follows: "As a direct and proximate result of the combined negligence of the Defendants, the Plaintiffs incurred significant damage to their vehicle, and experienced emotional distress and trauma resulting in significant past medical expenses and will incur future medical expenses for counsel[]ing services." Clearly, the two references to "injuries" do not

24

contradict the conclusive allegations in the complaint regarding a lack of physical injury.

Because it is well settled under Georgia's impact rule that the physical impact must result in a physical injury, see *Holt*, 368 Ga. App. at 56, and the plaintiffs' complaint allegations explicitly state that they did not suffer any physical injury, we agree with Contour that the well-pled factual allegations of the plaintiffs' complaint, along with all fair inferences and conclusions of fact to be drawn from the allegations, fail to support a claim for negligent infliction of emotional distress on this ground. See *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 452 (2) (571 SE2d 454) (2002) (finding no viable cause of action for negligent infliction of emotional distress where it was undisputed that the plaintiffs were not physically injured). That, however, does not end our inquiry.

(b) *Pecuniary loss exception*. The impact rule has no application where a plaintiff suffers a pecuniary loss "as a result of a tort involving an injury to the person even though this injury may not be physical." (Citation omitted.) *Mayorga*, 364 Ga. App. at 678 (2). The plaintiffs' complaint in this case alleges, and Contour admitted by default, that the plaintiffs "suffered pecuniary loss and reputational damages as a result of the gunshots and attack." Contour argues that this single allegation, alone,

25

does not support the plaintiffs' claim for negligent infliction of emotional distress on the basis of pecuniary loss.[6] Given the procedural posture of this case, we disagree.

Contour first asserts that "the plaintiffs did not allege that they suffered any loss that would trigger the pecuniary loss rule." Specifically, Contour states that the plaintiffs failed to "provide any legal basis for awarding reputational damages in a negligence case." Georgia courts, however, repeatedly have held that damage to reputation is a pecuniary loss sufficient to sustain a claim for emotional distress damages in a negligence action. See, e.g., *Ob-Gyn Assocs. of Albany v. Littleton*, 259 Ga. 663, 667 (2) (B) (386 SE2d 146) (1989) (emphasizing that injury to a person's reputation can support a claim for emotional distress damages based on pecuniary loss in a negligence claim), disapproved in part on other grounds by *Lee*, 272 Ga. at 588 (III), n. 8; *Eley*, 362 Ga. App. at 627 (3) (stating in a negligence case that "[t]he primary example of an injury to the person that is not physical has been damage to reputation."). Indeed, as *Mayorga* reiterated in its negligence claim discussion: "[F]or a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person even though this

---

[6] The plaintiffs admit in their appellate brief that property damage to their car is not a sufficient basis for pecuniary loss after *Mayorga*, 364 Ga. App. at 677-680 (2).

26

injury may not be physical. An injury to the reputation would be such an injury." 364 Ga. App. at 678 (2). The injury here is damage to reputation, the type of non-physical injury explicitly falling within the pecuniary loss rule. Id. Contour's argument in this regard fails.

Contour further argues that the plaintiffs have not established that they suffered reputational damages because their complaint does not "allege[] any facts to show that Plaintiffs suffered any such injury[.]" As this Court previously has held, however, whether a plaintiff suffers harm as a result of the defendant's tortious act or omission "is a fact question that can be deemed admitted through default[.]" *Zhong*, 345 Ga. App. at 141 (2) (c). Through its default in this case, Contour admitted the plaintiffs' factual allegations, agreeing that the attack giving rise to the negligence claim caused pecuniary loss and injury to the plaintiffs' reputation. The default concludes Contour's liability for damage to the plaintiffs' reputation and, as a result, their entitlement to emotional distress damages under the pecuniary loss exception to the impact rule.[7]

---

[7] In a single sentence Contour asserts that "because the trial court made no award of reputational damages, Plaintiffs cannot argue on appeal that this aspect of the 'pecuniary loss rule' exception supports the trial court's award of damages for emotional distress." First of all, Contour has abandoned this contention because it neither elaborates any argument nor cites any legal authority supporting the

Construing all doubts favorably to the plaintiffs, see *Zhong*, 345 Ga. App. at 140 (2) (b), a thorough review of the admitted factual allegations in the complaint, and the fair inferences and conclusions of fact to be drawn from those allegations, see *Willis*, 321 Ga. App. at 497, link the plaintiffs' injury to their pecuniary loss and establish that both the injury and the loss flow from Contour's negligence in failing to keep the premises safe. Accordingly, because these complaint allegations support the plaintiffs' claim for negligent infliction of emotional distress under the pecuniary loss exception, the trial court did not err in issuing a default judgment in favor of the plaintiffs on that claim.

*Judgment affirmed. Mercier, C. J., and Miller, P. J., concur.*

---

conclusory sentence. See *In re Estate of Louise Ray Burkhalter*, 354 Ga. App. 231, 237 (2) (a), n. 32 (840 SE2d 614) (2020) ("Mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted);*Gresham v. Harris*, 349 Ga. App. 134, 138 (1), n. 9 (825 SE2d 516) (2019) (reciting that "legal analysis . . . is, at a minimum, a discussion of the appropriate law as applied to the relevant facts") (citation, punctuation, and emphasis omitted). Second, this Court has no way of knowing exactly what evidence was presented at the trial on damages that led to the court's final judgment because Contour failed to provide us with a copy of the trial transcript or a suitable substitute. "It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal." *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014).